United States District Court
Southern District of Texas
**ENTERED**
May 16, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTIAN THOMPSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-23-0297 |
| | § | |
| THE HARRIS CENTER FOR MENTAL | § | |
| HEALTH, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Christian Thompson, brings this action against defendant, The Harris Center for Mental Health ("THC"), for discriminatory termination in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12111, et seq. ("ADAAA"); and for interference in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq. Pending before the court are Defendant's Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 25), Plaintiff's Response to Defendant's MSJ ("Plaintiff's Response") (Docket Entry No. 28), and Defendant's Reply to Plaintiff's Response to Defendant's MSJ and Defendant's Objections to Plaintiff's Declaration ("Defendant's Reply") (Docket Entry No. 29). For the reasons set forth below, Defendant's Objections to Plaintiff's Declaration will be overruled as moot or sustained, Defendant's MSJ will be granted, and this action will be dismissed with prejudice.

## I.  <u>Standard of Review</u>

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact, and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>) (quoting <u>Celotex</u>, 106 S. Ct. at 2553-2554).  "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." <u>Id.</u>  If, however, the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. <u>Id.</u>  In reviewing the evidence "the court must

draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

## II.  Undisputed Facts[1]

THC employed Thompson from March of 2017 until June of 2021 as a Service Coordinator for a Texas Home Living ("TxHmL") Team.[2] Thompson reported directly to Team Lead, Ericka Degracia ("Degracia"),[3] who reported to Program Director Annie Cuba ("Cuba").[4] Cuba reported to THC's Human Resources Department ("HR"),[5] directed by Terence Freeman ("Freeman").[6]

---

[1]See Factual Background, Plaintiff's Original Complaint, Docket Entry No. 1, pp. 3-7; Statement of Relevant Facts, Defendant's MSJ, Docket Entry No. 25, pp. 8-20; and Facts, Plaintiff's Response, Docket Entry No. 28, pp. 7-14.  All page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]See Deposition of Christian Thompson ("Thompson Deposition"), Exhibit A to Plaintiff's Response, Docket Entry No. 28-1, p. 17:6-16.  See also March 3, 2017, Offer Letter from THC to Plaintiff, Exhibit A-1 to Defendant's MSJ, Docket Entry No. 25-2, p. 2.

[3]Oral Deposition of Ericka Degracia ("Degracia Deposition"), Exhibit D to Plaintiff's Response, Docket Entry No. 28-4, pp. 9:13-10:19.

[4]Oral Deposition of Annie Cuba ("Cuba Deposition"), Exhibit C to Plaintiff's Response, Docket Entry No. 28-3, pp. 9:19-10:14.

[5]Cuba Deposition, Docket Entry No. 28-3, pp. 18:11-25.

[6]Oral Deposition of Terence Freeman ("Freeman Deposition"),
(continued...)

On March 23, 2017, Thompson acknowledged receipt of THC's Employee Handbook.[7]  THC's Employee Handbook identifies several grounds warranting an employee's involuntary termination, including violation of THC's policies and procedures, and remaining absent from work for three consecutive days without properly notifying the employee'[s] supervisor (job abandonment).[8]  Under the heading "Attendance and Punctuality," the Employee Handbook states that

> [i]f an employee is late for work or must be absent, the employee should notify his or her supervisor as soon as the need becomes known and provide the reason for the absence.  Employees must speak directly with their supervisor or another manager; leaving a voicemail or message with a coworker without a contact number is not acceptable.[9]

Thompson knew that THC protocol required him to promptly notify his supervisor when he would be absent from work.[10]

Thompson has had diabetes since 1987.[11]  In October of 2019 Thompson felt dizzy, went to urgent care, and took leave from October 10-15, 2019, due to a "hypertensive crisis" that he attributes to diabetes.[12]

---

[6](...continued)
p. 10:16-19, Exhibit B to Defendant's MSJ, Docket Entry No. 25-14, p. 11.

[7]Employee Handbook Employee Acknowledgment Form, Exhibit A-3 to Defendant's MSJ, Docket Entry No. 25-4, p. 2.  See also Thompson Deposition, Docket Entry No. 28-1, pp. 116:22-117:9.

[8]Employee Handbook Excerpts, Docket Entry No. 25-4, pp. 3-4.

[9]Id. at 12.

[10]Thompson Deposition, Docket Entry No. 28-1, p. 57:12-19.

[11]Id. at 11:20-25.

[12]Id. at 46:24-48:16 (attributing medical crisis to diabetes-
(continued...)

In March of 2021 Thompson asked for and received leave to travel to Nigeria from May 17th through June 14th.[13]   Thompson planned to visit his hometown, Uyo, Nigeria, because his brother had died a year earlier and he had not been able to travel due to the COVID-19 pandemic.[14]   The tickets that Thompson booked for travel to Nigeria had a departure date of Saturday, May 22nd, and a return date of June 20th.[15]  While in Nigeria Thompson experienced diabetes-related symptoms for which he was hospitalized from June 3-10, 2021, and then discharged to attend follow-up treatment and physiotherapy on an outpatient basis.[16]

On Monday, June 14, 2021, at 4:00 a.m., Thompson sent an email to his supervisor, Degracia, which he copied to her supervisor, Cuba, stating: "I will not be able to return to work tomorrow 06/14/2021 and subsequently due to ill health.  I will furnish you with a tentative date once cleared by my doctor."[17]  At 7:45 a.m., on June 14th Cuba responded that she hoped he would feel better

_____

[12](...continued) related symptoms).  See also Medical Return to Work/School Note, Exhibit A-4 to Defendant's MSJ, Docket Entry No. 25-5, p. 4.

[13]Thompson Deposition, Docket Entry No. 28-1, pp. 74:22-75:14.

[14]Id. at 75:18-76:17.

[15]Delta Itinerary, Exhibit E to Defendant's MSJ, Docket Entry No. 25-26, pp. 3-4.  See also Thompson Deposition, Docket Entry No. 28-1, p. 91:12-18.

[16]Medical Report on Mr. Christian Thompson from St. Athanasius Hospital Limited, Exhibit G to Plaintiff's Response, Docket Entry No. 28-7.

[17]Email chain, Exhibit H to Plaintiff's Response, Docket Entry No. 28-8, p. 2.

soon, that he would be placed on PTO ("Personal Time Off") for that day, and that THC "need[ed] a return-to-work date ASAP as [he had] already been on PTO four weeks."[18]    On Tuesday, June 15th, Wednesday, June 16th, and Thursday, June 17th, Thompson's supervisors sent follow-up emails asking him for an update and to let them know when he would be returning to work.[19]    Although Thompson received the June 14th email from Cuba, he did not respond to it due to poor or unavailable cell service in Uyo, Nigeria, which also prevented him from receiving the other emails sent from the THC on June 15th, 16th, and 17th.[20]    On June 17th Cuba sent an email to Quartira Payne ("Payne"), an HR Business Partner, seeking advice about "no call/no show" absenteeism.[21]

Thompson received outpatient care and treatment through June 16th, when his doctor in Nigeria adjudged him "to be fairly well and fit to travel," but said that Thompson would "need to continue with follow-up treatment with his doctors in the US."[22]    On June 17th Thompson sought a COVID-19 test and June 18th he received a

---

[18]Id., at 1.

[19]Id. at 3-5.

[20]Thompson Deposition, Docket Entry No. 28-1, pp. 102:18-108:11.

[21]Cuba Deposition, Docket Entry No. 28-3, p. 44:13-19; Email chain, Exhibit L to Plaintiff's Response, Docket Entry No. 28-12, p. 4.

[22]Medical Report on Mr. Christian Thompson from St. Athanasius Hospital Limited, Exhibit G to Plaintiff's Response, Docket Entry No. 28-7.  See also Thompson Deposition, Docket Entry No. 28-1, pp. 87:12-88:9.

negative result, which was needed for international travel.[23]
Thompson left Nigeria on June 19th and returned to Houston on
Sunday, June 20th.[24]

On June 21st Thompson called his doctor's office seeking a
first available appointment, and was told that would be on June
23rd.[25] On June 23rd, Thompson's physician, Dr. Albert Oguejiofor,
faxed a note to THC stating that Thompson need to be out of work
from June 23rd through July 1st due to "uncontrolled diabetes" and
"chronic kidney disease."[26] Later that same day Degracia sent an
email to Payne, notifying her of the note from Thompson's physician
and asking "what needs to be done."[27] On June 24th, Payne forwarded
the chain of emails from Cuba and Degracia to HR Director,
Freeman.[28]

On Thursday, June 24th, at 9:34 a.m., Thompson sent the
following text to Degracia:

---

[23]Exhibit I to Plaintiff's Response, Docket Entry No. 28-9,
p. 1; Thompson Deposition, Docket Entry No. 28-1, p. 92:9-20.

[24]Exhibit I to Plaintiff's Response, Docket Entry No. 28-9,
p. 2; Thompson Deposition, Docket Entry No. 28-1, p. 134:18.

[25]Thompson Deposition, Docket Entry No. 28-1, pp. 127:22-
128:14.

[26]Id. 125:18-126:8; Medical Return to Work/School Note, Exhibit
K to Plaintiff's Response, Docket Entry No. 28-11; Cuba Deposition,
Docket Entry No. 28-3, pp. 63:11-15 and 68:6-10.

[27]Email chain, Exhibit L to Plaintiff's Response, Docket Entry
No. 28-12, pp. 3-4.

[28]Id. at 1.

Good morning Ericka,

I have been trying to establish contact with you on my vacation related issues, get updates/instructions, as well as starting to let my clients know that I am available, but my phone and laptop are deactivated. It prompted that I need to contact you to unlock. Please activate. I would also like to speak with you if you have any chance.[29]

Degracia did not respond to Thompson's text.[30] Instead, at 9:39 a.m. Degracia sent an email to Payne notifying her of Thompson's text, and later that morning Payne replied "Hi Erica we are working on a solution. We will update on the next steps. Thanks."[31] At 3:18 p.m. that afternoon, Payne sent an email to undisclosed recipients stating:

Good Afternoon:

HR has approved the termination request based on job abandonment. Please draft the termination disciplinary action in performance pro and inform me when it is ready for my review. In the meantime I will begin drafting the termination letter and will send it once the disciplinary action has been approved. Please let me know the intended date and time that you will meet with the employee to administer the documentation and collect the equipment.[32]

---

[29]Exhibit M to Plaintiff's Response, Docket Entry No. 28-13; Thompson Deposition, Docket Entry No. 28-1, pp. 111:1-112:9; Degracia Deposition, Docket Entry No. 28-4, pp. 37:25-38:24.

[30]Thompson Deposition, Docket Entry No. 28-1, p. 111:10-18; Degracia Deposition, Docket Entry No. 28-4, p. 39:19-22.

[31]Email Chain, Exhibit L to Plaintiff's Response, Docket Entry No. 28-12, p. 3.

[32]Id. at 2.

A termination letter dated June 25th, 2021, was prepared for Cuba's signature but not finally approved by Cuba and Freeman until Monday, June 28th.[33]  The termination letter stated:

> Dear Mr. Thompson,
>
> Effective, June 18, 2021, your employment with The Harris Center (previously MHMRA of Harris County) as a Service Coordinator in the IDD Division is hereby terminated due to violation of Agency policy and procedure.  On June 14, 2021[,] you informed your supervisor by email, that you were ill.  Since that time you have not contacted your supervisor nor have you reported to work until Wednesday, June 23rd when you sent a doctor's note.  Remaining absent from work for three consecutive days without notifying your supervisor (job abandonment) is cause for termination as stated in the Employee Handbook, pages 21-22, B.10.d #19.  This misconduct connected to the work has resulted in termination from the Agency.[34]

On June 30th Thompson attended a meeting with Degracia, Cuba, and Payne, at which Cuba informed him that his employment was terminated for "job abandonment" effected June 18, 2021.[35]  Cuba asked Thompson if he had anything to say and he said, "No."[36]  Cuba asked Thompson to acknowledge receipt of the termination documents by signing a copy for THC, on which he wrote,

> I, Christian Thompson, the employee disagree with the allegation contained in this termination.  I never abandoned my job.  This is a blatant daylight corporate daylight lynching of an elderly employee.  I did nothing wrong taking the approved vacation and was sick overseas. I was hospitalized as documented and forwarded to the incumbents.  I returned to the US to see my doctor and

---

[33]Id. at 1-2.  See also Email Chain, Exhibit P to Plaintiff's Response, Docket Entry No. 28-14.

[34]Termination Letter, Exhibit N to Plaintiff's Response, Docket Entry No. 28-16.

[35]Thompson Deposition, Docket Entry No. 28-1, pp. 136:5-137:20.

[36]Id. at 137:11-13.

> continued treatment, and was excused to return to work on 7/1/2021.
>
> I believe this is a case of retaliation after undergoing incessant corporate bullying in effort to obtain a constructed discharge from me. I am still under doctor's treatment at this time and the incumbents are aware.[37]

Although Thompson testified that on the day of his termination meeting he gave a Medical Report from St. Athanasius Hospital in Nigeria showing that he had been hospitalized overseas and then treated as an out patient until he was fit to travel to a receptionist with instructions to provide it to the HR Director, Thompson acknowledged that he did not provide that report to his supervisors before or during the June 30th meeting at which he was told he had been discharged effective June 18th.[38]

### III. <u>Defendant's Objections to Plaintiff's Declaration</u>

Citing <u>Seigler v. Wal-Mart Stores Texas, L.L.C.</u>, 30 F.4th 472, 477 (5th Cir. 2022), and <u>Doe ex rel. Doe v. Dallas Independent School District</u>, 220 F.3d 380, 386 (5th Cir. 2000), <u>cert. denied</u>, 121 S. Ct. 766 (2001), for their application of the sham affidavit rule, THC objects to ¶¶ 5-7 and 9-10 of the Declaration of Christian Thompson ("Thompson's Declaration").[39]

---

[37]Notice of Disciplinary Action, Exhibit J to Plaintiff's Response, Docket Entry No. 28-10, p. 2. <u>See also</u> Thompson Deposition, Docket Entry No. 28-1, pp. 138:8-141:23.

[38]Thompson Deposition, Docket Entry No. 28-1, pp. 142:16-144:23.

[39]Defendant's Reply, Docket Entry No. 29, pp. 14-20 (citing (continued...)

A.    **Applicable Law**

"[A] declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  In Seigler, 30 F.4th at 477, and Doe, 220 F.3d at 386, the court applied the sham affidavit rule articulated in S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996), which held that the plaintiff could not "defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." See also Cleveland v. Policy Management Systems Corp., 119 S. Ct. 1597, 1603 (1999) (recognizing that federal courts "have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity").

---

[39] (...continued)
Declaration of Christian Thompson ("Thompson Declaration"), Exhibit B to Plaintiff's Response, Docket Entry No. 28-2).

**B.    Application of the Law to the Undisputed Facts**

1.    <u>Paragraphs 5 and 6 of Thompson's Declaration</u>

Paragraphs 5 and 6 of Thompson's Declaration address the reason why he booked tickets for his trip to Nigeria that exceeded the leave time he sought and received, _i.e._, to obtain a 30-day visa, and his alleged intention to adjust his flight schedule so that he could return to work on June 15, 2021.[40]  THC objects to these paragraphs as providing improper expert testimony regarding Nigerian immigration, customs, and laws, and as contradicting his deposition testimony that he could have adjusted his travel schedule, not that he intended to adjust his travel schedule.  Because ¶¶ 5 and 6 of Thompson's Declaration address subjects that are not relevant to issues the court is to consider on summary judgment, THC's objection to these paragraphs is **OVERRULED as MOOT.**

2.    <u>Paragraph 7 of Thompson's Declaration</u>

Paragraph 7 of Thompson's Declaration addresses the message that he emailed to his supervisor on June 14, 2021, informing her that he was unable to return to work "tomorrow and subsequently," and that he would update on his expected return date as soon as possible.  In this paragraph Thompson states that "[i]t was obvious from my note that I was seriously ill and undergoing treatment for

---

[40]Thompson Declaration, Docket Entry No. 28-2, pp. 1-2.

a long term medical issue."[41]   THC objects to ¶ 7 as improperly
stating "how individuals will interpret his email and the
seriousness of his medical issues."[42]   Because ¶ 7 of Thompson's
Declaration contains argument, not facts, THC's objection is
**SUSTAINED.**


    3.  Paragraphs 9 and 10 of Thompson's Declaration

    Paragraphs 9 and 10 of Thompson's Declaration address what was
said at his termination meeting on June 30, 2021.  Thompson states
that no one asked him if he could submit documentation capable of
excusing his absences from June 15th-22nd, and that if asked, he
would have done so immediately.[43]   THC objects to these paragraphs
as offering self-serving and unsupported testimony that contradicts
the record evidence.[44]   Because ¶¶ 9-10 of Thompson's Declaration
fail to identify documents that he would have produced if asked,
THC's objection to these paragraphs is **SUSTAINED.**

---

    [41]Id. at 2.

    [42]Defendant's Reply, Docket Entry No. 29, p. 18.

    [43]Thompson Declaration, Docket Entry No. 28-2, pp. 2-3.

    [44]Defendant's Reply, Docket Entry No. 29, pp. 18-19.

## IV.  THC's Motion for Summary Judgment

THC argues that it is entitled to summary judgment on Thompson's ADAAA and FMLA claims because Thompson is unable to present evidence capable of establishing a prima facie case for either claim or evidence that THC's stated reason for his discharge is not the true reason but, instead, a pretext for discrimination.[45] Asserting that he has diabetes and chronic kidney disease, that his supervisors sought to discharge him within a day after receiving a doctor's note stating his need for medical leave from June 23 to July 1, 2021, and that had his supervisors asked for a second doctor's note covering his need for medical leave the week before he would have provided one, Thompson argues that THC is not entitled to summary judgment on either of his claims.[46]

### A.  THC is Entitled to Summary Judgment on Thompson's ADAAA Claim

Thompson has asserted an ADAAA claim for wrongful termination.[47]  Thompson alleges:

50.  Plaintiff is an individual with a disability.

51.  Plaintiff has a physical impairment — Type 2 diabetes — that substantially limits a major bodily function, his endocrine system.  According to ADA[AA] regulations, diabetes should "easily be concluded" as substantially limiting endocrine function.  29 C.F.R. § 1630.2.

---

[45]Defendant's MSJ, Docket Entry No. 25, pp. 20-30.

[46]Plaintiff's Response, Docket Entry No. 28, pp. 14-27.

[47]Plaintiff's Original Complaint, Docket Entry No. 1, p. 1.

-14-

52.   Defendant regarded Plaintiff as having a physical impairment.

53.   Defendant, by and through its agents and employees, has intentionally engaged in the aforementioned practices, policies, customs, and usages made unlawful by the ADA[AA].

54.   Defendant has violated the ADA[AA] by discriminating against Plaintiff because of his actual or perceived disability.[48]

THC argues that it is entitled to summary judgment on Thompson's ADAAA claim because Thompson is unable to present evidence capable of establishing that he had a disability or that THC regarded him as disabled, or that the legitimate non-discriminatory reason for which THC discharged him was not true and was, instead, a pretext for discrimination, or that while true, was only one of the reasons for which he was discharged and that his disability was a motivating factor.[49]   Thompson responds that material fact issues exist on all elements of his ADAAA claim.[50]

1.   <u>Applicable Law</u>

Title I of the ADAAA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . ."  42 U.S.C. § 12112(a).  The ADAAA defines "qualified individual" as "an

---

[48]<u>Id.</u> at ¶¶ 50-54.

[49]Defendant's MSJ, Docket Entry No. 25, pp. 20-25.

[50]Plaintiff's Response, Docket Entry No. 28, pp. 14-22.

individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The definition of disability includes "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). To qualify as disabled it is not enough merely to have an impairment; a plaintiff must demonstrate that the impairment "substantially limits" a "major life activity." Hale v. King, 642 F.3d 492, 500 (5th Cir. 2011) (per curiam) (citing Equal Employment Opportunity Commission v. Chevron Phillips Chemical Co., LP, 570 F.3d 606, 614 (5th Cir. 2009)). "'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). "An impairment need not prevent, or significantly or severely restrict" performance of major life activities, but rather, the standard is whether it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). The term "major life activities" includes, but is not limited to, activities such as caring for oneself, eating, sleeping, thinking, and working. 42 U.S.C. § 12102(2)(A). Pursuant to the ADA Amendments Act of 2008 the term "major life activities" includes "[m]ajor bodily functions," which includes but is "not limited to . . . endocrine . . . functions." 42 U.S.C. § 12102(2)(B)). The ADAAA expressly

-16-

states that "[t]he definition of disability . . . shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of this chapter," 42 U.S.C. § 12102(4)(A), that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active," 42 U.S.C. § 12102(4)(D), and that "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as — medication . . ." 42 U.S.C. § 12102(4)(E)(i)(I). "[T]he relevant time for assessing the existence of a disability is the time of the adverse employment action." Chevron Phillips Chemical Co., 570 F.3d at 618. See also Neely v. PSEG Texas, Ltd. Partnership, 735 F.3d 242, 245 (5th Cir. 2013) (recognizing that the ADAAA essentially broadened the definition of "disability").

Thompson may establish an ADAAA claim by using direct evidence or the indirect method of proof set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). See Seaman v. CSPH, Inc., 179 F.3d 297, 300 (5th Cir. 1999). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Rachid v. Jack In The Box, Inc., 376 F.3d 305, 310 n.6 (5th Cir. 2004) (citation omitted). Thompson has not cited direct evidence of discrimination and does not argue that this is a direct evidence case. Thompson's initial burden under

the McDonnell Douglas framework is to establish a prima facie case of discrimination because of his disability by showing (1) he has a disability or was regarded as disabled, (2) he was qualified for his job, and (3) he was subjected to an adverse action on account of his disability. Caldwell v. KHOU-TV, 850 F.3d 237, 241 (5th Cir. 2017) (citation omitted). If Thompson establishes a prima facie case, a presumption of discrimination arises, and the burden shifts to THC to articulate a legitimate, non-discriminatory reason for its adverse action. Id. at 241-42. Once THC articulates a legitimate, nondiscriminatory reason for its adverse action, the burden shifts back to Thompson who may prove intentional discrimination by producing evidence from which the jury could conclude that THC's articulated reason is a pretext for discrimination. Id. at 242. "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." Id. "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Id. "In conducting a pretext analysis, the court does not 'engage in second-guessing of an employer's business decisions.'" Roberson-King v. State of Louisiana Workforce Commission, 904 F.3d 377, 381 (5th Cir. 2018).

2.  <u>Application of the Law to the Undisputed Facts</u>

Asserting that it did not discriminate against Thompson because of his disability, THC argues that it is entitled to summary judgment on Thompson's discriminatory discharge claim because Thompson is unable to establish a prima facie case, because THC discharged Thompson for the legitimate, non-discriminatory reason that he failed to provide documentation excusing his "no call/no show" absenteeism on June 15-18, 21, and 22, 2021, and because Thompson is unable to cite evidence capable of establishing that THC's stated reason for his discharge is pretextual.[51]

(a)  Thompson Has Established a Prima Facie Case

Without disputing that Thompson was qualified for his job, or that he suffered an adverse employment action, THC argues that Thompson cannot establish a prima facie case of disability discrimination because Thompson is unable to cite evidence capable of establishing that he is disabled or that THC regarded him as disabled. Citing <u>Griffin v. United Parcel Service, Inc.</u>, 661 F.3d 216, 223-24 (5th Cir. 2011), and asserting that "[t]he only medical evidence in the record supporting Thompson's allegation that he suffered a disability is a doctor's note showing Thompson would be out of work for one single week in late June 2021, but that he

---

[51]Defendant's MSJ, Docket Entry No. 25, pp. 20-25.

could return to work without any restrictions,"[52] THC argues that
the record contains no evidence capable of establishing that
Thompson's diabetes substantially limits a major life activity.[53]
In <u>Griffin</u> the Fifth Circuit held that an employee's diabetes,
which required only modest dietary and lifestyle changes, did not
substantially limit his eating, and therefore, did not qualify as
a disability under the ADAAA. <u>Id.</u> at 224.

Thompson responds that the THC relies on cases that predate
the 2008 amendments that were enacted expressly to overrule the
previously high bar for establishing a disability.[54] In pertinent
part the 2008 amendments state that major life activities include
"the operation of a major bodily function, including, but not
limited to . . . endocrine . . . functions." 42 U.S.C.
§ 12102(2)(B). Regulations promulgated thereto state that the
"[t]he term 'substantially limits' shall be construed broadly in
favor of expansive coverage, to the maximum extent permitted by the
terms of the ADA," 29 C.F.R. § 1630.2(j)(1)(i), and that "it should
easily be concluded that . . . diabetes substantially limits
endocrine function." 29 C.F.R. § 1630.2(j)(3)(iii).[55]

---

[52]<u>Id.</u> at 22 (emphasis in original).

[53]<u>Id.</u> at 21-22.

[54]Plaintiff's Response, Docket Entry No. 28, p. 16.

[55]<u>See</u> <u>id.</u> at 15-16.

In Griffin the Fifth Circuit held that an employee's diabetes, which required only modest dietary adjustments and a once-daily insulin shot, did not qualify as a disability under the ADA. Id. at 224. The Fifth Circuit cited Waldrip v. General Electric Co., 325 F.3d 652, 656 (5th Cir. 2003), for stating that

> neither the Supreme Court nor this court has recognized the concept of a per se disability under the ADA, no matter how serious the impairment; the plaintiff still must adduce evidence of an impairment that has actually and substantially limited the major life activity on which he relies,

and Sutton v. United Air Lines, Inc., 119 S. Ct. 2139, 2147 (1999), for instructing courts to make individualized determinations of whether an employee's impairment constitutes a disability, taking into consideration measures taken by the employee to mitigate the effects of the impairment. These cases on which Griffin relied predate the 2008 amendments to the ADA and regulations promulgated thereto cited by Thompson. See Neely, 735 F.3d at 245 (recognizing that the ADAAA singled out and superseded Sutton, 119 S. Ct. at 2139).

The ADAAA did not alter the definition of disability with respect to an individual, "a physical or mental impairment that substantially limits one or more major life activities of such individual," 42 U.S.C. § 12102(1)(A)), but it added provisions 42 U.S.C. § 12102(2)-(4) to supersede cases that interpreted the scope of "disability" narrowly. The Fifth Circuit has observed that the ADAAA was passed with the intention

-21-

> that the primary object of attention in cases brought
> under the ADA should be whether entities covered under
> the ADA have complied with their obligations and . . .
> that the question of whether an individual's impairment
> is a disability under the ADA should not demand extensive
> analysis.

Neely, 735 F.3d at 244.  Of particular importance to this case is the fact that endocrine function was included in the definition of major bodily functions.  See 42 U.S.C. § 12102(2)(B).  The Fifth Circuit has therefore referred to diabetes as "a condition covered by the [ADA]."  Gosby v. Apache Industrial Services, Inc., 30 F.4th 523, 524-25 (5th Cir. 2022) (citing 29 C.F.R. § 1630.2(j)(3)(iii) ("it should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: . . . diabetes substantially limits endocrine function")).  Moreover, under the ADAAA "disability" includes "[a]n impairment that is episodic or in remission . . . if it would substantially limit a major life activity when active."  42 U.S.C. § 12102(4)(D).  See also 29 C.F.R. § 1630.2(j)(1)(vii) ("An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.").  Whether a plaintiff has a disability under the ADAAA is ordinarily a question of fact.

THC does not dispute that while on leave in Nigeria Thompson was hospitalized and then treated as an outpatient for high blood

sugar, high blood pressure, and severe low back pain,[56] or that on June 23, 2021, his doctor provided THC a Medical Return to Work/School Note stating that he saw Thompson that day for uncontrolled diabetes mellitus and chronic kidney disease, and that Thompson could return to work on July 1, 2021.[57]  THC's summary judgment evidence shows that the decision to discharge Thompson was made late in the day that it received the note from Thompson's doctor notifying it of Thompson's diabetes and chronic kidney disease, and that Cuba, Degracia, and Payne conducted their termination meeting with Thompson on June 30, 2021, the day before his doctor released him to return to work after experiencing a diabetic episode.  The evidence that Thompson was discharged while experiencing an episode of an ADAAA-protected disability is sufficient for a reasonable jury to find that Thompson is disabled under the ADAAA and that he suffered an adverse employment action for ADAAA-violative reasons.  See Gosby, 30 F.4th at 527. Accordingly, the court concludes that Thompson has established a prima facie case of disability discrimination.

---

[56]Medical Report on Mr. Christian Thompson from St. Athanasius Hospital Limited, Exhibit G to Plaintiff's Response, Docket Entry No. 28-7.

[57]Medical Return to Work/School Note, Exhibit K to Plaintiff's Response, Docket Entry No. 28-11.

       (b)   THC   Has   Articulated   a   Legitimate,   Non-
           Discriminatory Reason for Thompson's Discharge

THC argues that it is entitled to summary judgment on Thompson's discriminatory discharge claim because he was discharged for a legitimate, non-discriminatory reason, _i.e._, Thompson violated the THC's policies and procedures by remaining absent from work for more than three consecutive days without properly notifying his supervisors as required by the THC's Employee Handbook.[58]  Remaining absent from work without properly notifying the employee's supervisor is a legitimate, non-discriminatory reason for discharging an employee.  See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995) (recognizing violation of a work rule as a legitimate nondiscriminatory reason for adverse employment action).  Because THC has met its burden of production, the burden of production shifts back to Thompson to present evidence that would enable a reasonable fact finder to find that THC's stated reason for his discharge is pretextual.

       (c)   Thompson Has Failed to Raise a Genuine Issue of
           Material Fact as to Pretext

Thompson "may show pretext either through evidence of disparate treatment or by showing that [THC's] proffered explanation is false or unworthy of credence." Caldwell, 850 F.3d

---

[58]Defendant's MSJ, Docket Entry No. 25, p. 23 (citing Employee Handbook Excerpts, Exhibit A-3 to Defendant's MSJ, Docket Entry No. 25-4, p. 4 ¶ 10.d.19).

at 242. "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Id. On summary judgment, Thompson only needs to raise "a genuine issue of fact regarding pretext." Id. Thompson does not attempt to show pretext by disparate treatment but, instead, argues that THC's stated reason for his discharge is false or unworthy of credence because he

> did not violate policy. Thompson's supervisors were aware of his disability and that he needed extended leave for his disabilities at the time they recommended the decision to terminate. To get to the result they wanted, they violated policy. They failed to respond to Thompson's communications and did not give Thompson the chance to submit a second doctor's note to cover the first part of his leave, as they were instructed to do by HR.[59]

### (1) Thompson Fails to Raise a Fact Issue Regarding Violation of THC Policy

Asserting that he complied with THC policy by sending his June 14th email notifying Degracia and Cuba that he would not be at work on June 15th or "subsequently" until released by his doctor,[60] and that Degracia and Cuba violated policy by failing to respond to his June 24, 2021, text, by failing to informing him of the additional step he needed to take to get his leave fully approved, and by failing to give him "the opportunity to submit additional

---

[59]Plaintiff's Response, Docket Entry No. 28, p. 18.

[60]Id. at 18-19.

documentation covering the period June 15-22,"[61] Thompson argues that THC's stated reason for his discharge is a pretext for disability discrimination.[62]

Although Thompson argues that he did not violate THC policy, he does not dispute that after sending an email to Degracia and Cuba on June 14, 2021, informing them that he would not be returning to work as planned on June 15th or "subsequently" due to illness,[63] he received an email from Cuba asking when he would return to work to which failed to respond.[64] Nor does Thompson dispute that THC's Employee Handbook provides that an employee who "[r]emains absent from work for three consecutive days without properly notifying the employee's supervisor" may be subject to immediate discharge,[65] or that the next time he communicated with his supervisors was ten days later on June 24, 2021, when he sent a text to Degracia asking her to reactivate his phone and laptop without saying anything about his absences.[66] Citing deposition

---

[61]Id. at 21.

[62]Id. at 18-21.

[63]Email chain, Exhibit H to Plaintiff's Response, Docket Entry No. 28-8, p. 2.

[64]Thompson Deposition, Docket Entry No. 28-1, pp. 102:18-108:11.

[65]Employee Handbook Excerpts, Docket Entry No. 25-4, p. 4 ¶ 19.

[66]Exhibit M to Plaintiff's Response, Docket Entry No. 28-13; Thompson Deposition, Docket Entry No. 28-1, pp. 111:1-112:9;
(continued...)

testimony of Cuba and Degracia, Thompson argues that his mere failure to provide a return to work date as Cuba requested could not be grounds for finding that he was "no-call no show" under THC's policy because Cuba and Degracia both testified that when they asked HR what to do about his absences, they were told that they would have to wait and see if he came back to work with a doctor's note covering the days he missed work.[67]  But there is no evidence that THC did not, in fact, wait and see if Thompson produced a doctor's note covering the days he missed work.  On June 23, 2021, Thompson's doctor provided THC a Medical Return to Work/School Note stating that he had seen Thompson for uncontrolled diabetes mellitus and chronic kidney disease, and Thompson could return to work on July 1, 2021.[68]  Because there is no evidence that Thompson ever provided THC a doctor's note covering the period June 15-22, 2021, Thompson has failed to cite evidence capable of proving that he did not violate, but in fact, complied with THC's policy regarding unplanned absences due to medical needs.

Even if Thompson had cited evidence capable of proving that he did not violate THC policy, that alone would not be sufficient to

---

[66](...continued)
Degracia Deposition, Docket Entry No. 28-4, pp. 37:25-38:24.

[67]Plaintiff's Response, Docket Entry No. 28, p. 19.  <u>See also</u> Cuba Deposition, Docket Entry No. 28-3, pp. 57:24-58:3; Degracia Deposition, Docket Entry No. 28-4, p. 34:1-22.

[68]Medical Return to Work/School Note, Exhibit K to Plaintiff's Response, Docket Entry No. 28-11.

raise a genuine issue of material fact for trial on the issue of pretext. See Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 378-79 (5th Cir. 2010) ("Jackson's assertion of innocence alone does not create a factual issue as to the falsity of Cal-Western's proffered reason for terminating him.").

> [U]nder the McDonnell Douglas framework, a plaintiff cannot prove that the employer's proffered reason is pretextual merely by disputing the truth of the underlying facts for that reason. Such evidence, alone, merely implies that an employer may have made a mistake in deciding to take action against an employee.

Haverda v. Hays County, 723 F.3d 586, 596 n. 1 (5th Cir. 2013) (addressing retaliation). Because the focus of the pretext inquiry is not whether THC's non-discriminatory reason was accurate but whether THC reasonably believed its non-discriminatory reason for discharging Thompson and then acted on that basis, Kitchen v. BASF, 952 F.3d 247, 253 (5th Cir. 2020), Thompson "must offer evidence to support an inference that [THC] had a [discriminatory] motive, not just an incorrect belief." Haverda, 723 F.3d at 596 n. 1. Thompson has failed to adduce evidence that any of the THC employees involved in the decision to discharge him — Degracia, Cuba, Payne, and Freeman — did not reasonably believe that his failure to communicate with his supervisors from June 14th to June 24th, and his failure to provide a doctor's note substantiating his need for medical leave from June 15th to 22nd violated THC policy and, that the real reason for his discharge was discriminatory animus for his disability.

Citing Freeman's deposition testimony that if Thompson was in contact with his supervisors, they should have informed him of the

need to submit a doctor's note covering his absences, Thompson argues that "[i]nstead of following Harris County policy and procedures to request a second doctor's note from Thompson on the morning of the 24th, Cuba and Degracia violated policy by not responding to Thompson's text or informing him of the additional step he needed to take to get his leave fully approved."[69]  Thompson contends that given the opportunity he would have provided "Dr. Akpanobong's note explaining his hospitalization and subsequent treatment through June 16 and his need to continue with follow up treatment upon returning to the [United States]."[70]  But Thompson admits that while he was in Nigeria he did not maintain contact with his supervisors, Degracia and Cuba, and that despite receiving Cuba's June 14th email requesting a return to work date, he never responded to that email.  Thompson also admits that after returning to the United States on June 20th more than three consecutive days passed before he contacting Degracia by text message on June 24th, and that text message did not mention his unexplained absences.  Although Thompson contends that on June 30th, the day of his termination meeting, he left Dr. Akpanobong's note with a receptionist, he admits that he did not provide it to his supervisors, and even if he had, it did not cover all of the days that he had missed work without a doctor's note.  Moreover,

---

[69]Plaintiff's Response, Docket Entry No. 28, p. 21.

[70]Id.

Thompson's contention that his supervisors did not give him an opportunity to submit additional documentation is belied by the comments that he wrote on his termination papers. Therefore, Thompson has failed to provide evidence from which a reasonable jury could find either that he did not violate THC policy or that the THC employees who decided to discharge him did not reasonably believe that he violated THC policy.

### (2)   Temporal Proximity is Insufficient to Establish Pretext

Thompson argues that the timing of his discharge also demonstrates pretext. According to Thompson, because THC decided to discharge him two days after receiving the note from his doctor informing THC of his need for leave due to diabetes mellitus and chronic kidney disease, there is a genuine dispute of whether his diabetes had a role in the decision to discharge him.[71] The Fifth Circuit has consistently held that temporal proximity alone is not enough to establish pretext. See Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 240 (5th Cir. 2015). Lacking more, Thompson cannot prove pretext simply by pointing to the temporal proximity of his doctor's notification to THC and his discharge.

---

[71] Id. at 20.

-30-

## B.    THC is Entitled to Summary Judgment on Thompson's FMLA Interference Claim

Thompson has asserted an FMLA interference claim.[72]  Thompson alleges:

> 57.    Plaintiff was entitled to leave because of a serious health condition that made him temporarily unable to perform the functions of his job and required continuing treatment by a health care provider with inpatient hospital care.

> 58.    Plaintiff gave proper notice of his need and intent to take FMLA leave.

> 59.    Defendant denied him the benefits to which he was entitled to receive under the FMLA.[73]

THC argues that it is entitled to summary judgment on Thompson's FMLA claim because Thompson is unable to establish a prima facie case of interference by showing that he properly notified THC of need for FMLA-protected leave, and because Thompson is unable to show that THC's reason for his discharge is a pretext for discrimination.[74]  Thompson responds that THC's MSJ should be denied because he gave proper notice of his need for leave and because the timing of his discharge and his supervisors' failure to follow policies or respond to his attempts to communicate with them is evidence of pretext.[75]

---

[72]Plaintiff's Original Complaint, Docket Entry No. 1, p. 8.

[73]Id. at ¶¶ 57-59.

[74]Defendant's MSJ, Docket Entry No. 25, pp. 25-30.

[75]Plaintiff's Response, Docket Entry No. 28, pp. 22-27.

1.   Applicable Law

The FMLA requires covered employers to grant covered employees up to twelve weeks of unpaid leave for certain qualifying reasons, such as the occurrence of a serious health condition that makes the employee unable to perform the functions of his position.  See 29 U.S.C. § 2612(a)(1).  The FMLA provides, in relevant part, that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided by the FMLA.  29 U.S.C. § 2615(a)(1).  "An 'interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA.'"  Acker v. General Motors, L.L.C., 853 F.3d 784, 788 (5th Cir. 2017) (citation omitted).  To establish a prima facie interference claim, Thompson must show that (1) he was an eligible employee, (2) the THC was an employer subject to the FMLA's requirements, (3) he was entitled to leave, (4) he gave proper notice of his intention to take FMLA leave, and (5) the THC denied him the benefits to which he was entitled under the FMLA.  See DeVoss v. Southwest Airlines Co., 903 F.3d 487, 490 (5th Cir. 2018) (citing Caldwell, 850 F.3d at 245). At issue here is whether Thompson raised a genuine issue of material fact as to whether he satisfied element (4) by providing proper notice of his intent to take FMLA leave.[76]

---

[76]See Defendant's MSJ, Docket Entry No. 25, pp. 26-30.  See also Plaintiff's Response, Docket Entry No. 28, p. 23 ("Defendant contests only one element of Thompson's prima facie case, that Thompson gave proper notice of his intention to take FMLA leave.").

In the case of unforeseeable absences, "notice must be give as soon as practicable." Acker, 853 F.3d at 788 (citing 29 C.F.R. § 825.303(a)). Employees "must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." Id. (citing 29 C.F.R. § 825.302(d)). "Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied." Id. at 789 (quoting 29 C.F.R. 825.302(d)). "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973, 977 (5th Cir.), cert. denied, 119 S. Ct. 72 (1998). "Whereas the employer determines whether an employee's leave qualifies for FMLA protection, the employee 'must explain the reasons for the needed leave.'" Greenwell v. State Farm Mutual Automobile Insurance Co., 486 F.3d 840, 842 (5th Cir. 2007) (quoting Willis v. Coca-Cola Enterprises, Inc., 445 F.3d 413, 419 (5th Cir. 2006)).

2.    Application of the Law to the Undisputed Facts

Asserting that Thompson's only communication to his supervisors before he exhibited repeat "no call/no show" absenteeism in violation THC's policies was the June 14, 2021, email that he sent to Degracia and Cuba, and that Thompson failed

-33-

to respond to emails that THC sent on June 14, June 15, June 16, and June 17, 2021, asking him for additional information regarding his absence and expected return-to-work date, THC argues that Thompson cannot establish a prima facie case of FMLA interference because he never properly notified THC of his need for and intent to take FMLA-protected leave.[77]   Thompson responds that he gave proper notice to THC of his need and intent to take FMLA leave.[78]

Although Thompson argues that he gave proper notice to THC of his need and intent to take FMLA leave, his June 14, 2021, email informing THC had he would not report to work as planned the next day or "subsequently" due to "illness," did not provide THC proper notice of his intent to take FMLA leave.[79]   See Greenwell, 486 F.3d at 843 ("An employee merely alleging sickness as the reason for his absence dos not automatically provide sufficient FMLA-notice."). Moreover, Thompson does not dispute that after sending an email to Degracia and Cuba on June 14, 2021, he received a follow-up email from Cuba asking for a return to work date "ASAP" to which he failed to respond.[80]   Cuba and Degracia each sent follow-up emails to Thompson requesting additional information to which he also

---

[77]Defendant's MSJ, Docket Entry No. 25, pp. 26-30.

[78]Plaintiff's Response, Docket Entry No. 28, pp. 23-25.

[79]Email chain, Exhibit H to Plaintiff's Response, Docket Entry No. 28-8, p. 2.

[80]Id. at 1.  See also Thompson Deposition, Docket Entry No. 28-1, pp. 102:18-108:11.

failed to respond.  On June 16, 2021, Degracia wrote, "Yesterday was your first no call/no show, and today is the 2nd day we have not heard from you.  We need to know when your return-to-work date will be ASAP."[81]  On June 17, 2021, Cuba wrote, "It has been a few days and you have not provided us with any type of update.  Please let us know a date of when your doctor says you can return to work."[82]  Although Thompson contends that he was unable to contact his supervisors from Nigeria due to internet outages, and that he attempted to contact Degracia on June 21st, the day after he returned to the United States, he does not dispute that following his June 14th email, he did not send another communication that reached Degracia until June 24th, when he sent her a text asking for his phone and laptop to be reactivated but said nothing about his absences.[83]

In order to establish FMLA interference Thompson must cite evidence capable of showing that for each of his non-approved absences on June 16th, June 17th, June 18th, June 21st, and June 22nd, unusual circumstances prevented him from complying with THC policy requiring him to maintain contact with his supervisors.  He

---

[81]Email chain, Exhibit H to Plaintiff's Response, Docket Entry No. 28-8, p. 3.

[82]Id.

[83]Exhibit M to Plaintiff's Response, Docket Entry No. 28-13. See also Thompson Deposition, Docket Entry No. 28-1, pp. 111:1-112:9; Degracia Deposition, Docket Entry No. 28-4, pp. 37:25-39:21.

has not done so.   Thompson's own self-serving statements that he was unable to contact his supervisors due to internet outages in Nigeria or that he attempted to contact Degracia on June 21st are not sufficient to raise a genuine issue of material fact.   See Vais Arms, Inc. v. Vais, 383 F.3d 287, 294 (5th Cir. 2004).   Because Thompson has failed to cite evidence capable of establishing that he properly notified THC of his intent to take FMLA-protected leave, THC is entitled to summary judgment on Thompson's FMLA claim.

## V.   Conclusions and Order

For the reasons stated in § III.B, above, THC's objections to ¶¶ 5 and 6 of Thompson's Declaration are **OVERRULED as MOOT**, and THC's objections to ¶¶ 7, 9, and 10 Thompson's Declaration are **SUSTAINED**.

For the reasons in § IV.A, above, the court concludes that THC is entitled to summary judgment on Thompson's claim for violation of the ADAAA; for the reasons stated in § IV.B, above, the court concludes that THC is entitled to summary judgment on Thompson's claim for violation of the FMLA.   Accordingly, Defendant THC's Motion for Summary Judgment, Docket Entry No. 25, is **GRANTED**.

**SIGNED** at Houston, Texas, on this 16th day of May, 2025.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

– 36 –